112 So.2d 654

Joseph **TAULLI**

v.

Hubert B. **HUGHES.**

No. 43762.

June 1, 1959.

Rehearing Denied June 25, 1959.

Gerald J. Gallinghouse, Deutsch, Kerrigan & Stiles, New Orleans, for plaintiff-appellant.

Louis H. Marrero, III, Marrero, S. Paul Weiss, Jr., New Orleans, for plaintiff-appellee.

FOURNET, Chief Justice.

Plaintiff, Joseph Taulli, instituted this suit to recover the sum of $33,825.57,[1] for

---

1. This figure is itemized as follows:

| | | |
|---|---|---|
| Equipment rental, | | |
| 7 mos. at $4,500.00 | | $ 31,500.00 |
| Truck rental, | | |
| 205 days at $7.50 | | $ 1,537.50 |
| Supervision, | | |
| 205 days at $25.00 | | $ 5,125.00 |
| Parts, | | |
| plus 1 month's rental on machine leased from Dunbar-Pugh Co. at $2,002.77 | | $ 3,963.07 |
| Total | | $ 42,125.57 |
| Paid on account | | $ 8,300.00 |
| Balance due | | $ 33,825.57 |

labor, material and rental of equipment furnished to the defendant, Hubert B. Hughes, in connection with his contract with the Morrison-Knudsen Co. and Blythe Bros. Co.[2] to do the clearing, grubbing and grading work on the cross-wind runway at Callender Airfield, Belle Chasse, Louisiana.[3] In his answer, defendant denied being indebted to plaintiff in any sum, claiming that he had entered into a partnership or joint venture with the plaintiff, whereby they were to share equally in the profits and losses; that their enterprise had resulted in a loss of $83,545.14, one-half of which is to be borne by plaintiff; and that inasmuch as plaintiff had contributed $34,500, against which he had already drawn an advance of $8,300,[4] plaintiff is indebted to him in the sum of $15,572.57,[5] which amount he seeks to recover from plaintiff in a reconventional demand. The trial judge, finding that there was no partnership or joint venture, entered judgment in favor of the plaintiff for the sum of $27,-163.07, disallowing the claims for supervision and use of truck, and dismissed the reconventional demand. Defendant is appealing from this judgment, and plaintiff has answered the appeal, praying that the award be increased to $33,825.57, the original amount prayed for in the petition, together with legal interest from date of judicial demand.

In relating the events preceding the verbal agreement, which forms the basis of his claim, plaintiff testified that he drove to Callender Airfield—at defendant's request—to inspect the proposed job site, accompanied by his brother, Peter Taulli, who was one of defendant's employees, and the defendant himself; that during the course of that ride it was agreed that in

2. These parties and their insurer, the Continental Casualty Co., were originally made defendants in this suit. However, by joint motion filed by attorneys representing plaintiff and defendants herein, it was agreed and the trial judge so approved that the exceptions of no right or cause of action and to the jurisdiction ratione materiae be overruled as to the defendant Hubert B. Hughes, and that the exceptions insofar as applied to the other defendants be maintained and the suit against them dismissed.

3. The prime contract for the Callender Airfield job was awarded by the United States, Department of the Navy, Bureau of Yards and Docks, to Morrison-Knudsen Co., Inc. and Blythe Bros. Co., Inc., who assigned said contract to the defendant.

4. The following advances were made:

| | |
|---|---|
| January 22, 1955 | $ 1,000.00 |
| February 19, 1955 | $ 3,500.00 |
| April 15, 1955 | $ 2,000.00 |
| June 17, 1955 | $ 1,000.00 |
| July 8, 1955 | $ 400.00 |
| July 12, 1955 | $ 400.00 |
| Total | $ 8,300.00 |

5. This amount is computed as follows:

| | |
|---|---|
| Total loss | $ 83,545.14 |
| Plaintiff's share | $ 41,772.57 |
| Plaintiff's contribution | $ 34,500.00 |
| | $ 7,272.57 |
| Advance to plaintiff | $ 8,300.00 |
| Balance due by plaintiff | $ 15,572.57 |

the event defendant's bid for the job were accepted, defendant would lease from plaintiff three bulldozers at a monthly rental of $1,500 per machine[6] and furnish the operators, fuel, parts, repairs, etc.; that plaintiff was to be employed as supervisor on the job at a salary of $25 daily and was to receive an additional $7.50 daily for the use of his pick-up truck. Accordingly, plaintiff worked as supervisor for approximately seven months (205 days) until July 1955, at which time defendant told him that his services or equipment were no longer needed. Plaintiff's testimony as to the terms of the oral contract was corroborated by his brother.

On the other hand, defendant testified that the parties had undertaken the Callender Airfield job on a partnership or joint venture basis; that a verbal agreement had been entered into (out of the presence of any witnesses) which provided that any profits or losses on the job were to be shared equally; that all rentals of equipment, whether furnished by plaintiff or defendant, were to be charged directly against the job together with all labor, repairs, parts, etc.; that the job was to be charged with $25.00 daily for supervision;[7] that neither party was to receive any salary, although plaintiff was to supervise the job and devote his entire time to it and to be entitled to draw advances against his share of the profits, to be accounted for in a final settlement upon completion of the work; and that accordingly, all records on the Callender Airfield job were kept on a separate and distinct basis.

In support of his contention that the parties had entered into a partnership agreement or joint venture, defendant summoned ten of his employees (or former employees), all of whom testified that they had been told on various occasions by the defendant "in Taulli's [plaintiff's] presence" or by the plaintiff himself that the job was to be operated as a joint venture. The testimony of these witnesses does not strike us as very convincing. While they seemed to be surprisingly well informed as to all phases of this particular job they knew little, if anything, of other jobs and some of them volunteered information pertaining to the alleged partnership or joint venture even before having been asked pertinent questions thereto. Although the

6. During the course of the job, it became necessary to rent additional equipment. Plaintiff leased a tractor from the Dunbar-Pugh Co. for a monthly rental of $2,002.77, to be paid by the defendant. The machine was used on the job for three months; defendant paid two months' rental; rental for the third month is included in plaintiff's claim herein.

7. The job was charged with $25 daily for supervision, which amount, according to defendant's records, was paid to Peter Taulli, plaintiff's brother. However, it is undisputed that Peter Taulli had been assigned to a job in Florida during most of the time the Callender Airfield job was in progress.

defendant seems to derive great comfort from the fact that all of his employees confirmed that they had been instructed to keep separate records on this job with regard to outgoing materials, it appears that this procedure was likewise adopted for some of defendant's other jobs, and there is no doubt but that the maintenance of separate payroll records was required by the United States Navy, this being a government job.

■ It would serve no purpose to recapitulate in detail the testimony adduced at the trial of this case, suffice it to say that it is not only vague and inconclusive, but also contradictory and confusing in many aspects; however, from our appreciation of the evidence we think—as did the trial judge—that the parties were not engaged in a partnership or joint venture.

This conclusion is supported by the fact that defendant himself, when filing his 1955 income tax return, did not treat this job as a partnership enterprise, but took a deduction of the total loss of $83,545.14, whereas plaintiff, for the same year, reported the entire $8,300 received from defendant as "payment for services" without taking any loss for either the Callender Airfield or any other job. Furthermore, defendant's records disclose that all of the items claimed by plaintiff, including supervision and pick-up truck, were actually charged against the Callender Airfield job and used in computing the loss thereon.

Also, the record reveals that defendant, when sued by one Edward Dufresne for damage to certain machinery,[8] rented by said Dufresne to the plaintiff for use on the Callender Airfield job, did not only fail to make plaintiff a party to that proceeding, but also testified during the trial of that suit that plaintiff had acted as his authorized *employee* in renting the machine. Moreover, the defendant paid the judgment rendered against him in the sum of $10,-898.60, except for a small amount, without making any demand on plaintiff.

■ However, the trial judge erred in denying plaintiff recovery for his services and the use of his pick-up truck. We think that plaintiff's testimony, in addition to being corroborated by that of his brother, is, in a large measure, substantiated by the books and records of the defendant.

For the reasons assigned, the judgment appealed from is amended by increasing the amount of the award to be paid plaintiff from $27,163.07 to $33,825.57, together with legal interest from date of judicial demand, and as thus amended, it is affirmed.

8. Suit No. 35,939, Edward A. Dufresne v. H. B. Hughes, Twenty-Fourth Judicial District Court, Parish of Jefferson, the entire record of which was introduced in the present suit and forms part of this record.